**Kuss Machine Tool & Die Co., Inc.
v. El-Tronics, Inc.**

*Leonard Turner*, for plaintiff.

*Mancill, Cooney, Semans & Hedges*, for defendant.

HAGAN, P. J., April 10, 1958.—This case came on for trial before the writer of this opinion, sitting without a jury and, by stipulation of counsel, was submitted to a master.

The master, after taking testimony, filed a report, supplemental report and additional supplemental report, in which he found in favor of plaintiff. Defendant filed exceptions to the master's reports, which after argument were dismissed by the court en banc. From this action of the court defendant has appealed to the Supreme Court of Pennsylvania; and this opinion is written in accordance with Rule 43 of the Supreme Court Rules.

The master, Herbert A. Barton, Esq., a very capable and experienced attorney, filed a comprehensive report. The facts found by him were supported by competent evidence, and, in accordance with the terms of the stipulation of reference, they are final and conclusive. These facts are substantially as follows:

Defendant, El-Tronics, Inc., had a contract with an agency of the United States Government, which required defendant to supply, inter alia, certain metal relay racks. These racks had to be fabricated in accordance with certain plans and specifications provided by the Governement, and they were not, therefore, available in the open market and had to be custom made. Bids were originally taken by defendant

and a subcontract was awarded. The racks which were made by the subcontractor were not acceptable to the Government and were rejected.

As a result of the foregoing, defendant fell behind in its obligation to the Government and speed became an important factor in the fabrication of the racks. It was at this stage that defendant's agent, Mr. Long, negotiated with Fred Kuss, president of plaintiff corporation, as to the fabrication of the racks by plaintiff Kuss suggested that defendant might be able to fulfill its contract with the Government by the purchase of certain racks which were regularly made by plaintiff, but defendant found that these racks would not comply with the Government's plans and specifications. Plaintiff thereupon agreed to fabricate racks for defendant in strict accordance with the Government's plans and specifications.

When Mr. Long asked Mr. Kuss for a price for the racks, Mr. Kuss stated that he was not in a position to quote a price at the time, and, inasmuch as speedy production of the racks was essential to defendant, the purchase order submitted to plaintiff by defendant provided that "Prices [were] to be established between Fred Kuss, Jr. and Frank Long at a later date."

Plaintiff thereupon proceeded to fabricate the racks. During the process of doing so, certain problems arose, which plaintiff's representatives discussed with defendant's representatves, resulting in various changes in the plans and specifications. There is no question but that the racks, as finally fabricated and supplied to defendant, were properly made, and the only controversy between the parties is whether the price charged by plaintiff was reasonable.

The legal situation here presented can be considered in either of two aspects. On the one hand, it could be found that the negotiations between the parties re-

sulted in an express contract, with no price specified, in which case the buyer must pay a reasonable price. See section 9 of the Uniform Sales Act of May 19, 1915, P. L. 543, 69 PS §81, which was still in effect when this contract was negotiated. On the other hand, it may be concluded that since the price had not been determined by the negotiations of the parties, the terms were too vague to constitute a contract, inasmuch as price is an essential part of a contract. However, under such circumstances, plaintiff would be entitled to recover in quasi contract on a quantum valebant basis, in view of the fact that plaintiff actually manufactured the racks and that they were received and accepted by defendant. It therefore follows that, whether we conclude that the negotiations between the parties resulted in an express contract or a quasi contract, plaintiff is entitled to recover a "reasonable price" for the racks.

Under ordinary circumstances the reasonable price of merchandise is the market price, but as the master properly found, there was no market price for the merchandise here in question. To explain how plaintiff arrived at the price it charged defendant, the following evidence was produced by plaintiff.

Plaintiff maintains an elaborate cost accounting system which enables it to ascertain the exact cost of labor and material used in any particular job. As part of this cost accounting system, plaintiff offered in evidence the records applicable to the fabrication of the racks in question. By this method plaintiff proved the exact cost to it of fabricating the racks. Plaintiff then added a profit of 10 percent of the total cost of the racks and then billed defendant for the cost and profit.

On the issue of the actual cost of the racks to plaintiff and plaintiff's profit thereon, defendant offered

evidence in contradiction of plaintiff's evidence, but the master accepted the latter evidence and found as facts that the number of man hours which were spent by plaintiff's workmen in fabricating the racks for defendant was reasonable for the work done; that the compensation paid by plaintiff to its employes was fair and reasonable; that the amount of materials supplied to the job was reasonable; that the prices paid for such materials were fair and reasonable and that a profit of 10 percent of the cost was a fair and reasonable profit for this type of contract. Since all of these findings are supported by competent evidence, they are, under the stipulation of counsel, final and conclusive. Even if these findings of the master were not final and conclusive under the terms of the stipulation of counsel, we have concluded from our own reading of the record that the findings were amply supported by the evidence.

Defendant's objection to the master's allowance to plaintiff of its actual cost, plus a reasonable profit, is predicated upon defendant's contention that such a formula converts the agreement of the parties into a "cost plus" contract, and that the agreement cannot be so construed. The test, however, is not what name we employ to designate the contract between the parties, but whether the criterion presented by plaintiff and adopted by the master was proper in the determination of what constituted a "reasonable price" for the racks supplied by plaintiff to defendant. While defendant strenuously argues that the criterion applied by plaintiff and accepted by the master is not a proper one for determining the reasonable price of the racks, defendant does not suggest any better or other criterion. We therefore conclude that under the special circumstances of this case the criterion applied by the master in determining a reasonable price was the only fair standard to be applied.

Defendant offered to place in evidence certain bids it had received from others for the fabrication of similar racks, and the price it had paid to another subcontractor for the subsequent manufacture of similar racks. The master refused to accept this evidence, but he clearly ruled that if defendant would present as witnesses the persons who had made these bids or who had fabricated these racks he would hear them. This ruling was clearly proper. The relevancy of such testimony in this case is not apparent; but, assuming its relevancy, the evidence offered was clearly hearsay and was merely another's opinion as to a reasonable price for fabricating the racks in question. Had the persons who submitted bids been presented as witnesses and subjected to cross-examination, it might well have been disclosed that their bids were improperly arrived at, that they were incapable of properly fabricating the racks, or that their bids were not indicative of the reasonable price of fabricating the racks for any one of a number of reasons. Similarly, had the subcontractor who subsequently manufactured such racks for defendant been subjected to cross- examination with respect to the price he charged defendant, it might well have developed that the price he charged was improperly arrived at; indeed, he may actually have sustained a loss. In this respect it is to be noted that defendant did not accept the bids of these other subcontractors; that the subcontractor with whom the bid was first placed was unable to properly fabricate the racks, and that, despite the expressed willingness of the master to hear such testimony, defendant did not present as witnesses the persons who made the bids or fabricated the racks.

One final point relating to the credibility of the plaintiff's president, Fred Kuss, requires discussion and in its consideration the chronology of the case is quite important. The first hearings before the master,

at which time Kuss was a witness, were held December 1 and 2, 1955. On July 16, 1956, the master's report was filed, and on September 21, 1956, the master's supplemental report was filed. On January 30, 1957, the case was remanded by the court to the master for additional testimony, and on April 3, 1957, Kuss again testified before the master. On July 30, 1957, the master's additional supplemental report was filed. On November 20, 1957, defendant filed a rule to add to the record certain docket entries, evidencing the conviction of Fred Kuss on June 18, 1957, for Federal income tax evasion, and the imposition of sentence thereupon on September 20, 1957. The purpose for the introduction of these records was to impeach the credibility of Kuss as a witness in this case. The law, however, is that a record of a *prior* conviction is admissible to impeach a witness' credibility. See Commonwealth v. Socci, 177 Pa. Superior Ct. 426. The first time that plaintiff testified as a witness was one and one-half years before his conviction, and the second time he testified was two and one-half months before his conviction and five and one-half months before the imposition of sentence. It is clear, therefore, that the conviction which defendant seeks to place on the record was not a *prior* conviction, and was therefore properly excluded. In a somewhat analogous situation, the Superior Court stated in a very recent case:

"Although Bradshaw [a witness] may be under indictment for perjury he has not been convicted and sentenced. Until that time he is a competent witness": Commonwealth v. Bartell, 184 Pa. Superior Ct. 528, 537.

For the foregoing reasons, defendant's exceptions to the master's original, supplemental and additional supplemental reports were properly dismissed, and defendant's rule to add to the record was properly discharged.

*Final Order and Judgment*

And now, January 20, 1958, in accordance with the findings and conclusions of the master, judgment is entered for plaintiff and against defendant for the following amount:

Balance due plaintiff on contract . . . . . $8,580.64

Interest at 6% on $8,580.64 from 12/29/53 to 1/20/58 . . . . . . . . . . . . 2,087.95

Interest at 6% on $3,430.00 from 12/29/53 to 12/9/54 . . . . . . . . . . . . 198.78

Total . . . . . . . . . . . . . . . . . . . . . $10,867.37